UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL DÉCOR, INC. and THOMAS H. WOLF<br><br>Plaintiffs,<br><br>vs.<br><br>THE CINCINNATI INSURANCE COMPANY,<br><br>Defendant. | CASE NO. CV 11-2602-JST (FMOx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER** |

## I. INTRODUCTION

Before the Court is Defendant and Counterclaimant The Cincinnati Insurance Company's Motion to transfer the case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). (Def.'s Mot., Doc. 22.) Plaintiffs and Counter-defendants Global Décor, Inc. and Thomas Wolf have filed an opposition (Pls.' Opp'n, Doc. 28), and Defendant has filed a reply (Def.'s Reply, Doc. 31-1). The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15. Accordingly, the hearing set for June 20, 2011, at 10:00 a.m. is vacated. Having considered the parties' briefs, the Court GRANTS Defendant's Motion and transfers the case to the United States District Court for the Northern District of Illinois.

## II. BACKGROUND

The following facts are taken from Plaintiffs' Complaint and the exhibits attached thereto. Plaintiff Global Décor is an Illinois corporation, and Plaintiff Wolf is its President and Chief Executive Officer. (Compl. ¶¶ 1-2.) Defendant is an Ohio corporation. (*Id.* ¶ 3.) Defendant issued Plaintiffs an insurance policy and subsequent renewals providing commercial general liability and commercial umbrella coverage for the period from December 15, 2008, through December 15, 2011 (the "Policy"). (*Id.* ¶¶ 8-9.)

On March 31, 2010, Ted Merianos filed suit in the Central District of California against Merry Chance Industries, Ltd. and Steven Kwan ("*Merianos*" action). (*Id.* ¶ 12.) On February 3, 2011, Merry Chance filed a counterclaim against Merianos and Plaintiffs. (*Id.* ¶ 21.) On February 16, 2011, Plaintiffs provided notice to Defendant of the Merry Chance counterclaim and requested coverage under the Policy. (*Id.* ¶ 31, Exh. 6.) On March 11, 2011, Defendant denied this request. (Id. ¶ 32, Exh. 7.) Two weeks later, Plaintiffs filed this suit seeking declaratory relief that Defendant has a duty to defend Plaintiffs against the Merry Chance counterclaim in the *Merianos* case. On May 9, 2011, Defendant filed the instant Motion to transfer venue.

## III. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A district court has broad discretion in determining whether to transfer venue. *See* 28 U.S.C. § 1404(b); *Jones v. GNC Franchising, Inc.*, 211 F. 3d 495, 498 (9th Cir. 2000). "This transfer power is, however, expressly limited by the final clause of § 1404(a) restricting transfer to those federal districts in which the action 'might have been brought.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting 28 U.S.C. § 1404(a)). Thus, district courts utilize a two-step analysis to determine if venue is proper. "The threshold question under Section 1404(a) requires the court to determine whether the case could have been brought in the forum to which the transfer is sought." *Roling v. E*Trade Sec., LLC*, 756 F. Supp. 2d 1179, 1184 (N.D. Cal. 2010). "If venue would be appropriate in the would-be transferee court, then the court must make an 'individualized, case-by-case consideration of convenience and fairness.'" *Id.* (quoting *Jones*, 211 F.3d at 498). In *Jones*, the Ninth Circuit set forth ten permissive factors that a court might consider: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of non-party witnesses; (8) the ease of access to sources of proof; (9) the presence of a forum selection clause; and (10) the public policy of the forum state. *Jones*, 211 F.3d at 498-99.

In reviewing a motion to transfer venue, a court may consider facts outside of the pleadings and the pleadings need not be accepted as true. *Cf. Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004) (reviewing an analogous improper venue motion pursuant to Federal Rule of Civil Procedure 12(b)(3)). The movant bears the burden of persuasion to make a strong showing of inconvenience to warrant upsetting the plaintiff's

choice of forum. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

IV. **DISCUSSION**

A. <u>This Action Could Have Been Brought in the Northern District of Illinois</u>

The parties do not dispute that Plaintiffs could have brought this case in the Northern District of Illinois. Because diversity of citizenship under 28 U.S.C. § 1332 provides the sole basis for jurisdiction, 28 U.S.C. § 1391(a) applies. *See* 28 U.S.C. § 1391(a). Under § 1391(a), a case may be heard in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
>
> (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). Defendant resides in Illinois, does business in the Northern District of Illinois, and is therefore subject to personal jurisdiction in the Northern District of Illinois. (Def.'s Mot. at 12.) Thus, this case can be heard in the Northern District of Illinois.

B. <u>Interests of Convenience and Justice – *Jones* Factors</u>

Defendant argues that the balance of convenience supports a finding that the convenience of the parties and the interest of justice would be better served in the Northern District of Illinois. *See* 28 U.S.C. § 1404(a). The Court agrees.

*1) Location Where Relevant Agreements Were Negotiated and Executed*

Defendant issued Plaintiffs the original Policy in the Northern District of Illinois, as the underwriter for Defendant who negotiated the Policy with Plaintiffs did so from the

Northern District of Illinois. (Monahan Decl., Doc. 24, ¶¶ 3, 15.) The underwriter for Defendant who negotiated the renewals for the Policy did so from Ohio. (Wilson Decl., Doc. 25, ¶¶ 3, 11.) Nor do Plaintiffs dispute that they negotiated and accepted the Policy and the renewals in the Northern District of Illinois. The Policy was therefore negotiated and executed in the Northern District of Illinois. Thus, this factor weighs in favor of transferring the case.

*2) State Most Familiar with the Governing Law*

A diversity case should be litigated "in a forum that is at home with the law that must govern the action[.]" *Decker*, 805 F.2d at 843. "To determine the applicable substantive law, a federal court sitting in diversity applies the choice-of-law rules of the forum." *Narayan v. EGL, Inc.*, 616 F.3d 895, 898 (9th Cir. 2010). California's choice of law statute is California Civil Code section 1646.[1] Section 1646 states that "a contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. A contract "'indicates' a place of performance within the meaning of section 1646 if the intended place of performance can be gleaned from the nature of the contract and its surrounding circumstances." *Frontier Oil Corp. v.*

---

[1] California courts also have applied a "governmental interest" analysis in choice of law questions. *CRD Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1141-42 (9th Cir. 2010). The governmental interest analysis, however, "does not supplant the legislative command of section 1646." *Frontier Oil Corp. v. RLI Ins. Co.*, 63 Cal. Rptr. 3d 816, 830 (Cal. Ct. App. 2007). Furthermore, "the choice-of-law rule in Civil Code section 1646 determines the law governing the interpretation of a contract, notwithstanding the application of the governmental interest analysis to other choice-of-law issues." *Id.* at 835. As the court in *Frontier* held: "The California Supreme Court has never applied the governmental interest analysis to determine the law governing the interpretation of a contract and has never stated or suggested that section 1646 does not determine the law governing the interpretation of a contract." *Id.*; *cf. Columbia Cas. Co. v. Gordon Trucking, Inc.*, 758 F. Supp. 2d 909, 915 (N.D. Cal. 2010) ("Where the contract contains no choice of law provision *and the case does not present an issue of contract interpretation*, California courts apply the governmental interest test to determine which state's law should apply.") (emphasis added). Thus, the Court applies only section 1646.

5

1  *RLI Ins. Co.*, 63 Cal. Rptr. 3d 816, 827 (Cal. Ct. App. 2007) ("The intended place of performance is a question of contract interpretation for the court to decide, except to the extent the answer may depend on the credibility of extrinsic evidence.").

The Policy does not contain a choice of law provision nor does it explicitly indicate a place of performance. Defendant argues the "intended place of performance" for the Policy was Illinois because the Policy "was issued in Illinois, through an Illinois insurance agent, covering solely Illinois operations." (Def.'s Mot. at 13.) Defendant further asserts that the Policy "contains endorsements with Illinois-specific terms and conditions" and the "premium paid by Global Décor to Cincinnati was based on these Illinois exposures and the risks of loss associated with Illinois-based operations." (*Id.*) Plaintiffs argue, however, that California law applies because section 1646 mandates application of the law of the state where the *defense* of an underlying lawsuit is to be performed. (Pls.' Opp'n at 8.) In addition, Plaintiffs claim that because the Policy's "coverage territory" included the entire country and other parts of the world, Defendant "had to expect the place of performance of its defense duty was wherever Global [Décor] might get sued, certainly including as [sic] California." (*Id.* at 9.) Under either Plaintiffs' or Defendant's argument, Illinois law applies.

Under Plaintiffs' broad theory, i.e., that the intended place of performance is wherever the underlying lawsuit actually arises, a specifically intended place of performance would not exist. Pursuant to section 1646, if a policy does not indicate a place of performance, the governing law is "where [the contract] is made." Cal. Civ. Code § 1646. Here, Plaintiffs do not dispute that they accepted and executed the terms of the Policy in the Northern District of Illinois and, thus, that the Policy was "made" there. *See Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1197 (S.D. Cal. 2007) ("A contract is 'made' in the place of acceptance." (citing *ABF Capital Corp. v. Grove Props. Co.*, 126 Cal. App. 4th 204, 222 (Cal. Ct. App. 2005))). Illinois law would therefore apply.

6

The Court, however, finds Defendant's position, and thus the holding in *Frontier*, more instructive. The court in *Frontier* concluded that California was the intended place of performance of a liability insurance policy issued in Texas based on three policy endorsements relating specifically to plaintiff's oil and gas operations in Beverly Hills, California. *Frontier*, 63 Cal. Rptr. 3d at 822, 836-37. Based on the three endorsements, the court concluded that the parties anticipated a suit arising from plaintiff's operations in California and that defendant insurer would be obligated to provide a defense in California if the claims were covered under the policy in question. *Id.* at 837. Here, despite its broad coverage territory, the Policy includes Illinois endorsements, entitled "Illinois Changes – Known Injury or Damage," that modify both the commercial general liability and the umbrella coverage. (*See* Doc. 1-1, at 40, 66.) As in *Frontier*, these endorsements "clearly demonstrate that the parties intended the policy to provide coverage for" Plaintiffs operations in Illinois. *Frontier*, 63 Cal. Rptr. 3d at 837. Thus, the Court concludes that the intended place of performance of the Policy was Illinois and that Illinois law controls. Because Illinois law applies, this factor weighs heavily in favor of transfer as a district court in the Northern District of Illinois that regularly applies Illinois law will be much more familiar with the applicable law than a district court in the Central District of California.

*3) Plaintiff's Choice of Forum*

"Although great weight is generally accorded plaintiff's choice of forum," *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987), "if the plaintiff does not reside in his chosen forum, courts accord considerable less deference to his choice of forum." *Healey v. Spencer*, No. CV 09-7596, 2010 WL 669220, at *1 (C.D. Cal. Feb. 22, 2010); *see Costco*, 472 F. Supp. 2d at 1191 ("plaintiff's choice of forum receives less deference because California is not plaintiff's domicile"). Furthermore, "[i]f the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [plaintiff's] choice is entitled to only minimal consideration." *Lou*, 834 F.2d at 739. Here,

7

Plaintiffs reside in the Northern District of Illinois, not California.  In addition, the *Merianos* counterclaim, brought in the Central District of California against Plaintiffs by parties not involved in this suit, serves as Plaintiffs' sole basis for filing this case in California.  An underlying breach of contract dispute filed in the Central District of California, however, does not necessarily provide this Court with an interest in resolving a separate duty to defend suit involving interpretation of a contract governed by Illinois law and negotiated by parties located in Illinois and Ohio.  Thus, Plaintiffs' choice of forum receives little, if any, deference.

> *4) The Parties' Respective Contact with the Chosen Forum, and (5) Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum*

These two factors weigh heavily in favor of transfer.  Neither Plaintiffs nor Defendant reside in the Central District of California, and Plaintiffs have not provided any evidence that they have any relevant contact with the Central District of California.  Instead, Plaintiffs assert that this forum is proper because Defendant "is registered to do business in California, . . . defends lawsuits in California and . . . sells insurance in California."  (Pls.' Opp'n at 3.)  However, Plaintiffs do not give any explanation as to why its claim should be heard in this forum, other than the fact that the *Merianos* counterclaim was filed against Plaintiffs in the Central District of California.  Although Defendant is a global insurance company with contacts in California, such contacts have no relation to this case as the Policy was negotiated and executed in Illinois.  As mentioned above, Plaintiffs' claim for declaratory relief is based on a Policy that was negotiated and executed by parties in Illinois and Ohio and that is bound by Illinois law.  In light of this fact, and because Global Décor's headquarters are located in the Northern District of Illinois and Wolf is a citizen of Illinois, the case should be heard in Illinois.

### 6. *The Costs of Litigation in the Two Forums*

The costs of litigation and convenience of the potential witnesses favor transfer to Illinois. Because the individuals who executed, negotiated, and accepted the Policy on behalf of the parties are located in Illinois and Ohio and may serve as witnesses if necessary, proceedings in the Northern District of Illinois would provide a more convenient and cost-effective forum. *See Italian Colors Rest. v. Am. Express Co.*, No. C 03-3719, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003) ("Generally, litigation costs are reduced when venue is located near most of the witnesses expected to testify or give depositions."); *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009) ("The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)." (quoting *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005))). Plaintiffs' nakedly assert that transfer would increase costs, cause delay, and result in a duplication of effort because the *Merianos* suit is pending in this district. (Pls.' Opp'n at 10.) Plaintiffs provide no explanation, however, as to why transfer would result in any of these consequences. Thus, this factor favors transfer.

### 7. *Availability of Process to Compel Attendance of Non-Party Witnesses*

This factor is irrelevant as neither party has indicated that any non-party witnesses are necessary in this case.

### 8. *Ease of Access to Sources of Proof*

The "ease of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations." *Metz*, 674 F. Supp. 2d at 1149 (quoting *Szegedy v. Keystone Food Prods., Inc.*, No. CV 08-5369, 2009 WL 2767683, at*6 (C.D. Cal. Aug. 26, 2009)). "That notwithstanding, the possibility that documents can be produced electronically does not alter the conclusion that the cost of litigation will likely be less if the case were venued in

the forum where the evidence is located." *Patent Mgmt. Found., LLC v. Analog Devices, Inc.*, No. C 10-03630, 2011 WL 197831, at *4 (N.D. Cal. Jan. 20, 2011). Any relevant documents or evidence as to the Policy will be located in Illinois or Ohio, not California. This factor therefore favors transfer.

### *9. Presence of a Forum Selection Clause*

This factor is irrelevant as the Policy does not contain a forum selection clause.

### *10. Public Policy of the Forum State*

Plaintiffs contend that California has a strong public policy interest in this dispute because "all of the events potentially implicating insurance coverage in the underlying case occurred and are occurring in California, not Illinois," and "because it affects the California federal court system." (Pl.'s Opp'n at 11.) Plaintiffs continue to conflate the interests involved in the underlying *Merianos* suit with the interests in this case. Although California may have an interest in resolving the *Merianos* suit, that is of no moment here. Again, this suit involves the interpretation of contract bound by Illinois law and entered into by parties in Illinois and Ohio. California, therefore, does not have an interest in resolving this suit.

## V. CONCLUSION

Accordingly, the Court GRANTS Defendant's Motion to transfer venue and TRANSFERS the case to the United States District Court for the Northern District of Illinois.

DATED: June 16, 2011

**JOSEPHINE STATON TUCKER**
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE